UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EI CORPORATION, INC., <br><br>  Plaintiff <br><br> v. <br><br> GALLANT CAPITAL PARTNERS, LLC; QUALITY BUILT, LLC; and JOHN GILLETT, <br><br>  Defendants | Case No.: 2:20-cv-01119-APG-NJK <br><br> **Order Granting in Part Motion for Temporary Restraining Order and Granting Motions for Leave to File Sur-Reply and for Leave to File Supplemental Declarations** <br> **and** <br> **TEMPORARY RESTRAINING ORDER** <br><br> [ECF Nos. 4, 41, 43] |

Plaintiff Ei Corporation seeks a temporary restraining order (TRO) against defendants John Gillett, Gallant Capital Partners, LLC, and Quality Built, LLC based on their alleged breaches of two agreements containing non-solicitation clauses. Having considered the parties' briefs, the evidence, and the arguments at the July 15, 2020 hearing, I grant in part Ei's motion and enter a limited TRO as set forth below.

**I. ANALYSIS**

To qualify for a TRO, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, under the sliding scale approach, the plaintiff must demonstrate: (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

/ / / /

**A. Serious Questions on the Merits**

    1. Gillett

Section 9.1 of Gillett's employment agreement prohibits him from

> directly or indirectly, without the prior written consent of [Ei], hir[ing] or caus[ing] to be hired, solicit[ing], recruit[ing], raid[ing], or encourag[ing] to cease to work with [Ei] . . . any person who is at the time of such activity, or who was within the six (6) month period preceding such activity, an employee of [Ei].

ECF No. 4 at 55. Section 9.2 prohibits Gillett from "directly or indirectly, solicit[ing], encourag[ing], or caus[ing] any customer, vendor, supplier, or manufacturer of [Ei] to cease doing business with [Ei] or to reduce the amount of business such customer, vendor, supplier, or manufacturer does with [Ei]."

    Ei has met its burden of showing serious questions on the merits as to whether Gillett breached his employment agreement. As to section 9.1, Ei presents evidence that Danielle Armentrout, who worked closely with Gillett at Ei, ceased her employment with Ei to move to Quality. ECF No. 40-1 at 1-2. It appears she did so because Ei notified her she would be terminated. *See id.* But she left Ei before her final date of employment and was hired by Quality. *Id.* Thus, there are at least serious questions as to whether Gillett, as Quality's president, hired Armentrout or caused Quality to hire her and whether he directly or indirectly caused or encouraged her to cease working for Ei earlier than she otherwise would have.

    Ei also presents evidence that Gillett reached out to various customers and vendors of Ei on Quality's behalf, one of which has an exclusive arrangement with Ei. *See* ECF No. 40-1 at 4-5. Gillett would not breach his employment agreement unless he encourages customers or vendors to cease or reduce business with Ei. However, Ei's evidence indicates that Gillett has attempted to contact a company with whom Ei has an exclusive relationship and that Quality

recently secured contracts for 45L tax work from two builders who were Ei customers. *See id.*[1]
As I stated at the hearing, more information about these communications and contracts may show that Gillett has not breached his employment agreement. But at present, the evidence raises serious questions as to whether Gillett has breached his employment agreement.

### 2. Quality

Ei has shown serious questions on the merits as to whether Quality breached the nondisclosure agreement (NDA). Although Quality disputes it is bound by the NDA, as discussed at the hearing there are at least serious questions as to whether Quality is bound by it. There does not appear to be any genuine dispute that Gallant signed the NDA as part of the overall process by which Gallant and Quality were considering purchasing Ei. Throughout that process, Gallant, who is Quality's majority shareholder, represented it was signing documents on Quality's behalf. *See* ECF No. 40-1 at 8, 12, 18. And it would make little sense for the non-solicitation/hiring clause to apply to Gallant and not Quality. Gallant is an investment firm, while Quality is a competitor with Ei. Thus, it is likely the parties' intent and understanding that Quality could not solicit and hire Ei employees as set forth in the NDA.

There are also serious questions as to whether Quality breached the agreement. The NDA states that for 18 months following its effective date, Gallant:

> shall not solicit for employment or employ any employee of [Ei] without the prior written consent of [Ei]. Nothing contained herein shall be construed to restrict

---

[1] The defendants object to Ei's hearsay evidence as well as to the reply and supplemental declarations. But I can consider hearsay when ruling on a TRO motion. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (stating district courts have discretion to consider hearsay when deciding whether to issue a preliminary injunction). And given the time-sensitive nature of TRO motions generally, as well as the rapidly evolving circumstances in this case, I must evaluate the evidence currently before me.

> [Gallant] from any general forms of solicitation for employees (including through the use of employment agencies) not specifically directed toward employees of [Ei] and provided further that [Gallant] shall not be restricted from hiring any such person who responds to any such general solicitation or who contacts [Gallant] on his or her own initiative.

ECF No. 4 at 60.  Ei presents evidence that Quality employees have solicited Ei employees to apply to or work for Quality, and one of those former Ei employees now works for Quality. ECF Nos. 43-1; 43-2.

### B.  Irreparable Harm

Ei has shown a likelihood of irreparable harm.  Ei has already lost at least one employee that was solicited by a Quality employee.  There is evidence that Ei lost 45L tax business from two builders and that Gillett attempted to make inroads on Ei's exclusive relationship with Sunrun. ECF No. 40-1 at 4-5.  Loss of talent and goodwill are not readily quantifiable in money damages. *See Herb Reed Enters., LLC*, 736 F.3d at 1250 (stating that damage to goodwill can constitute irreparable harm).

### C.  Balance of Hardships/Public Interest

The balance of hardships tips sharply in Ei's favor on the narrow grounds for which I will enter a TRO.  The defendants contractually agreed not to engage in certain conduct, so enjoining them from violating their contractual obligations imposes little to no hardship on them while I preserve the status quo until a preliminary injunction hearing.  In contrast, if I do not enjoin the defendants, Ei is likely to suffer irreparable harm in the loss of talented employees and goodwill with customers and vendors.

Additionally, the public interest favors enforcing the defendants' contracts. *Abdou v. DaVita Inc.*, No. 2:16-cv-02597-APG-CWH, 2017 WL 7036659, at *3 (D. Nev. Nov. 17, 2017) ("[T]he public has an interest in protecting the freedom of persons to contract.").  Enforcing

contracts is particularly important in situations like this, where the plaintiff has disclosed information to its competitor under a nondisclosure agreement, a key employee with institutional knowledge then switched to the plaintiff's competitor, and there is some evidence that the protections the plaintiff bargained for in the employment and nondisclosure agreements are not being honored.

### D.  Other Requests

Ei requested a broader restraining order than I am entering.  I deny Ei's other requested relief at this time because Ei has not met its burden of showing it is appropriate under *Winter* or *Alliance for the Wild Rockies*.  Ei may seek an expansion of the TRO as part of the preliminary injunction hearing.  And the defendants may be able to narrow or eliminate the injunction after the evidentiary hearing.  The preliminary injunction hearing may result in this restraining order being terminated, narrowed even further, or expanded.

### E.  Bond

The TRO orders the defendants to do only what they are contractually required to do, and the defendants have presented no evidence to support anything other than a nominal bond.  I therefore will order Ei to post a bond in the amount of $1,000.

### F.  Preliminary Injunction Hearing

As discussed at the TRO hearing, the parties are to confer and attempt to resolve issues related to the preliminary injunction hearing, including whether they need discovery, how long the hearing would last, how out-of-state witnesses should be handled in light of the COVID-19 pandemic, and when the hearing should be scheduled (including whether it ought to be held before or after I resolve the motion to transfer venue).  Unless the parties reach an agreement

before then, I will address these issues, as well as related issues about extending the TRO until a preliminary injunction hearing can be held, at the hearing presently scheduled for July 21, 2020.

## II.  CONCLUSION

I THEREFORE ORDER that the motion for leave to file sur-reply **(ECF No. 41)** and motion for leave to file supplemental declarations **(ECF No. 43) are GRANTED**.

I FURTHER ORDER plaintiff Ei Corporation, Inc.'s motion for temporary restraining **(ECF No. 4) is GRANTED in part**.

I FURTHER ORDER that plaintiff Ei Corporation, Inc. shall post a $1,000 bond by Friday, July 17, 2020.

## **TEMPORARY RESTRAINING ORDER**

I HEREBY TEMPORARILY RESTRAIN defendant John Gillett from violating his contractual obligations under his Executive Employment Agreement with plaintiff Ei Corporation, Inc. as set forth in sections 9.1 and 9.2 of that agreement.  Specifically, defendant John Gillett is hereby restrained from directly or indirectly, without Ei's prior written consent, hiring or causing to be hired, soliciting, recruiting, raiding, or encouraging to cease to work with Ei any person who is at the time of such activity, or who was within the six (6) month period preceding such activity, an Ei employee.  Defendant John Gillett is also restrained from directly or indirectly soliciting, encouraging, or causing any customer, vendor, supplier, or manufacturer of Ei to cease doing business with Ei or to reduce the amount of business such customer, vendor, supplier, or manufacturer does with Ei.

I HEREBY TEMPORARILY RESTRAIN defendant Quality Built, LLC from violating its contractual obligations under the Confidentiality and Nondisclosure Agreement entered into between Gallant Capital Partners, LLC and Capstone Headwaters as set forth in section 7 of that

agreement. Specifically, Quality is restrained from soliciting for employment or employing any employee of Ei without Ei's prior written consent. This does not restrict Quality from any general forms of solicitation for employees (including through the use of employment agencies) not specifically directed toward Ei employees. Nor does it restrict Quality from hiring anyone who responds to such a general solicitation or who contacts Quality on his or her own initiative.

DATED this 16th day of July, 2020 at 8:20 am.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE